1

Hon. Barbara J. Rothstein

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
8                              AT SEATTLE

9   JASON FUHR, individually, and AS
    EXECUTOR OF THE ESTATE OF SHAUN
10  FUHR, DAVONTA TANIYA FUHR,
    individually,                              No.      2:23-cv-00600 BJR
11
                    Plaintiffs,
12                                             DEFENDANTS' MOTION FOR
         vs.                                   SUMMARY JUDGMENT
13
    CITY OF SEATTLE, and NOAH ZECH
14
                    Defendants.
15

16

17                        **I.  INTRODUCTION**

18          Shaun Fuhr fired a gun at Ajiona Taylor in a Seattle park, kidnapped her baby, evaded law

19  enforcement for over 30 minutes, and refused to surrender before being shot by law enforcement.

20  Shaun Fuhr made a series of decisions over a prolonged period that led to his death. Fuhr had

21  ample opportunity to surrender to police. The objective facts contained in video footage and other

22  undisputed evidence establish that there is no genuine dispute of material fact. This Court should

23

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 1
(2:23-cv-00600 BJR)

grant summary judgment in favor of Defendants City of Seattle and Officer Noah Zech in this case.

## II. STATEMENT OF FACTS

### A.  The Initial Call for Police Response / The Scene at the Park

On April 29, 2020, Shaun Fuhr ("Fuhr"), Ajiona Taylor ("Taylor"), and their 1-year-old child in common were at Rainier Park in Seattle. (Declaration of Catherine E. Riedo ("Riedo Decl."), Ex. A Taylor 911 Call at 00:35-00:45; Declaration of Cheryl Kiefer ("Kiefer Decl."), ¶ 3). At 2:12 p.m., Taylor called 911 and frantically asked, "where you guys at please my baby daddy he's got a gun he's in the park he just shot in the park he has my baby!" (Riedo Decl., Ex. A Taylor 911 Call at 00:00-00:15; Ex. B CAD; Kiefer Decl., ¶ 3 and 6). Taylor can be heard begging the 911 dispatcher for help:

> Taylor: "He's my baby's dad, he has my baby, we have a no contact order already, he just beat me up yesterday, my arm is swollen, I just want my daughter you know I'm trying to go –
>
> Dispatcher:  Ok did he come and take the child from you while you were there?
>
> Taylor:  I just ran away because I'm scared I'm scared
>
> Dispatcher:  Did he have any weapons?
>
> Taylor:  He has a gun I know he has it he shot it in the park my ear is ringing he just shot it in Skyway today he shot it in Skyway
>
> Dispatcher:  Ok ok we have a call in.
>
> Taylor:  Please help please not fast enough please, my baby –
>
> Dispatcher: What's his name?
>
> Taylor:  His name is Shaun Fuhr.  We already have a no contact order, please, I want my daughter please!  She's only one. Please I'm scared for her!"

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 2
(2:23-cv-00600 BJR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

(Riedo Decl., Ex. A Taylor 911 Call at 00:55-01:45).

Civilian witness Terrance Roy ("Roy") was also at Rainier Park and called 911 to report "a guy with a gun and a child" who was involved in an altercation with "possibly his wife." (Riedo Decl., Ex. C Roy 911 Call at 00:00-00:15; Kiefer Decl., ¶ 4). Roy told Taylor to "run away" after Fuhr pulled a gun.  He advised that Fuhr still had "possession of the child." (Riedo Decl., Ex. C Roy 911 Call at 01:00-01:15). Roy explained that Fuhr placed the gun in the back of his pants (Riedo Decl., Ex. C Roy 911 Call at 02:15-02:25). Roy provided a description of Fuhr and Taylor. (Riedo Decl., Ex. C Roy 911 Call at 01:40-02:15; 02:55-03:30). Roy told dispatch that he left the park with his children so they didn't "catch a bullet" (Riedo Decl., Ex. C Roy 911 Call at 03:40-03:50).  He later told investigators that "we, uh, heard a small explosion and, uh, it spooked them pretty bad. And I just told them it was a firework 'cause it happens around here, but it sounded a little bit like it had a bit of an echo to it, too, so.."   (Riedo Decl., Ex. G Roy Interview, p. 2).

**B.  Seattle Police Department Response**

Officer Irwin arrived at the park at approximately 2:18 p.m. and located Taylor. (Riedo Decl., Ex. B CAD; Kiefer Decl., ¶ 6). Officer Irwin was familiar with Taylor from prior contacts including domestic violence incidents between Fuhr and Taylor. (Riedo Decl., Ex. D Irwin BWV at 21:18:30-21:18:40; 21:19:35-21:19:50; Declaration of Jesus Valenzuela ("Valenzuela Decl."), ¶ 5).[1]

Taylor was crying and shaking. (Riedo Decl., Ex. D Irwin BWV). Her arms were covered in obvious bruises and a clump of hair was hanging off her back. (Riedo Decl., Ex. D Irwin BWV;

[1] All timestamps for body worn videos cited herein refer to the timestamps shown on the upper right-hand corner of the videos. The timestamps are in Greenwich Mean Time (GMT) which is 7 hours ahead of Pacific Standard Time (PST).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 3
(2:23-cv-00600 BJR)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Ex. E Photo of Ajiona Taylor).  Officer Irwin observed that her arm appeared to be broken. (Riedo Decl., Ex. F Irwin BWV 21:40:55-21:41:00; Valenzuela Decl., ¶ 5). Taylor repeatedly begged for help finding her baby. (Riedo Decl., Ex. D Irwin BWV).  She pleaded, "we have to find my baby … she cannot stay with him he's drunk." (Riedo Decl., Ex. D Irwin BWV at 21:19:50-21:19:60).

Officer Irwin continued to speak with Taylor and learned that Fuhr was in possession of a firearm, had fired a shot at Taylor in the park, and was drunk. (Riedo Decl., Ex. D Irwin BWV at 21:19:50-21:19:60; 21:20:00-21:20:30; Ex. F Irwin BWV at 21:23:00-21:23:20). Officer Irwin observed a fired cartridge casing on the basketball court where Taylor indicated Fuhr was located when he fired the gun. (Riedo Decl., Ex. D Irwin BWV at 21:20:15-21:20:40).  Officer Irwin updated dispatch that, "suspect fired the firearm, I've got the shell casing here on the ground, he's incredibly intoxicated, has the child with him, mother of the child believes the child is in grave danger." (Riedo Decl., Ex. D Irwin BWV at 21:18:55-21:19:00).  Taylor is heard on body worn video stating, "she's in danger, like DANGER."  (Riedo Decl., Ex. D Irwin BWV at 21:20:35-21:20:40).  Officer Irwin also requested a K9 track. (Riedo Decl., Ex. D Irwin BWV at 21:21:20 – 21:21:30). Taylor is heard on Officer Irwin's body worn video telling her mother over the telephone: "Mom, the police are looking for Shaun and [L.T.] he has a gun he tried to shoot me in the park mom, mom the police are everywhere what's Shaun's number we have to find [L.T.] he's drunk and he has a gun. mom what's his number! mom!" (Riedo Decl., Ex. F Irwin BWV at 21:23:00-21:23:20).

Sergeant Ronald Mazziotti also responded to the park and allocated resources, including a request for SWAT, the Guardian One helicopter, and a phone ping. (Riedo Decl., Ex. H Mazziotti BWV at 21:26:45-21:27:45; Valenzuela Decl., ¶ 6) Guardian One responded and had a loud

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 4
(2:23-cv-00600 BJR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1    presence over the neighborhood while the police search for Fuhr ensued. (Riedo Decl., Ex. G Roy

2    Interview, p. 3)

3           Officer Corey Fleming and his K9 partner Officer Buddy arrived at the park and began

4    tracking at the location where Fuhr fired his weapon on the basketball court. K9 Officer Buddy is

5    a generalist dog who is trained to detect and track based on human scent. (Declaration of Corey

6    Fleming ("Fleming Decl."), ¶ 5-7). Officers Fleming, King, Aguilar, and Schaefer ran along with

7    K9 Officer Buddy during the track. (Riedo Decl., Ex. I Schaefer BWV at 21:26:20-21:26:45;

8    Valenzuela Decl., ¶ 8).

9           Simultaneously, SWAT Officers Ness, Pirack, Renick, Zech[2], and Sergeant Diamond were

10   listening to SPD radio broadcasts at their office. They received information that a suspect fired a

11   shot and kidnapped an infant around 37th and Genesee. (Declaration of Sergeant Jason Diamond

12   ("Sgt. Diamond Decl."), ¶ 3-4). Sergeant Diamond ordered all available SWAT officers to deploy

13   and assist patrol. (Sgt. Diamond Decl., ¶ 5).

14          SWAT Officers Zech and Ness loaded their gear into their SPD vehicle and began to drive

15   towards the scene. (Riedo Decl., Ex. J Ness Dep 21:2-5). En route to the scene, radio updated that

16   there was probable cause to arrest Fuhr for felony domestic violence assault with a firearm and

17   kidnapping. (Riedo Decl., Ex. B CAD; Ex. H Mazziotti BWV at 21:35:10-21:35:25).  SWAT was

18   requested to run alongside the K9 tracking team, so they headed to where the K9 team was

19   tracking.  (Riedo Decl., Ex. J Ness Dep 23:23-24:1; 24:2-6).  The K9 team was tracking near the

20   area of 37th and Dakota, which is where Officers Zech and Ness parked and exited their vehicle.

21

22

23
_____

[2] Officer Zech in 2020, now Sergeant Zech.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 5
(2:23-cv-00600 BJR)

(Riedo Decl., Ex. J Ness Dep 24:16-19). Officers Zech and Ness joined the K9 track. (Riedo Decl., Ex. K Zech Dep 21:17-19).

Meanwhile, radio dispatch advised that a 911 caller reported that an individual matching Fuhr's description, with a baby, was seen breaking into a building that was under construction at 37th and Dakota. (Riedo Decl., Ex. K Zech Dep 45:9-12; Ex. B CAD). Patrol officers already arrived at that building and were beginning to stage. (Riedo Decl., Ex. J Ness Dep 26:5-15). Dispatch also updated that a cell tower ping request to Fuhr's number returned coordinates that corresponded to that same building (Riedo Decl., Ex. B CAD). K9 Officer Buddy had also tracked to the same area, so Officers Zech and Ness were already there when this information came in. (Fleming Decl., ¶ 8-10).

**C. Interactions with Shaun Fuhr**

Officer Zech was standing with Officers Aguilar, King, and Schaefer at the southwest corner of the building under construction. (Riedo Decl., Ex. L King Dep 36:23-25; 37:5-8). Officer Zech began giving Officers Schaefer, Aguilar, and King directions for containing the area. (Riedo Decl., Ex. I Schaefer BWV at 21:49:10-21:49:30).

Officer Zech was looking east down the space between the building under construction and the fence line of the homes to the south. (Riedo Decl., Ex. K Zech Dep 56:2-4; Riedo Decl., Ex. I Schaefer BWV at 21:49:25-21:49:35). Officer Zech spotted a person's arm briefly appearing around the corner of the building under construction, and then being pulled quickly out of view. (Riedo Decl., Ex. K Zech Dep 56:7-9; Ex. I Schaefer BWV at 21:49:25-21:49:35). Officer Zech raised his rifle and continued looking down the side of the building. Suddenly, a man with a baby meeting Fuhr's description, and later identified as Fuhr, came into view again and ran eastbound towards the southeast corner of the yard. (Riedo Decl., Ex. K Zech Dep 57:4-6). Fuhr ran a slightly

uphill route away from officers. (Riedo Decl., Ex. K Zech Dep 57:19-20). Fuhr was carrying a baby in one arm low on his body, near his hip. (Riedo Decl., Ex. K Zech Dep 57:22-23; Declaration of William Neale ("Neale Decl."), Ex. A, Appendix H). The baby's head and arms were flopping violently as Fuhr ran from officers. (Riedo Decl., Ex. K Zech Dep 57:25-58:2; Declaration of Aaron Aguilar ("Aguilar Decl.") ¶ 5). Officer Zech had grave concern for the safety of the baby. (Riedo Decl., Ex. K Zech Dep 77:24-25; 78:1-3).

Multiple officers issued loud verbal commands to Fuhr to stop. (Riedo Decl., Ex. I Schaefer BWV at 21:49:35-21:49:45). Officer Zech can be heard on body worn video shouting a loud verbal order to Fuhr to "stop." (Riedo Decl., Ex. K Zech Dep 63:5-10). Fuhr ignored the clear, loud orders to stop, and instead chose to continue running, then went over a fence and out of view. (Riedo Decl., Ex. K Zech Dep 58:2) This sequence of events can be seen and heard on body worn videos. (Riedo Decl., Ex. M Aguilar BWV at 21:49:25-21:49:45; Ex. N King BWV at 21:49:25-21:49:45; Ex. I Schaefer BWV at 21:49:25-21:49:45; Ex. O Zech BWV at 21:49:25-21:49:45; Valenzuela Decl., ¶ 4, 7, and 9). Officer Zech immediately turned and ran east down the driveway of the adjacent residential building, rounded the corner of the building, and briefly ran south between buildings to try and intercept Fuhr's predicted path of travel. (Riedo Decl., Ex. K Zech Dep 59:1-4; Ex. M Aguilar BWV; Ex. L King BWV; Ex. O Zech BWV at 21:49:40-21:49:50). While Officer Zech was on the narrow concrete pathway in between buildings, Fuhr reappeared in Officer Zech's view, emerging from bushes and heading towards a fence line on the southeast corner of the property. (Riedo Decl., Ex. K Zech Dep 58:14-15; Ex, O Zech BWV; Ex M Aguilar BWV at 21:49:45-21:49:50).

Officers Zech, Aguilar, and King stopped at the southern portion of the residential building. (Riedo Decl., Ex. L King Dep 42:1-2; 42:12-14). On the south side of the area was a 6' to 8' tall

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 7
(2:23-cv-00600 BJR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1    wooden fence. (Riedo Decl., Ex. L King Dep 42:2-4). On the east side was a small embankment

2    going up about 4 feet and the convergence of two wooden fences. (Riedo Decl., Ex. L King Dep

3    42:6-8). As he approached Fuhr looked to the fence line, turned, looked at Officer Zech, looked at

4    a lower fence line between Fuhr and Officer Zech, and continued advancing toward Officer Zech.

5    (Riedo Decl., Ex. K Zech Dep 61:1-3; Ex. L King Dep 44:13-18). Fuhr's hands were down near

6    his waist. (Riedo Decl., Ex. K Zech Dep 61:6). Officer Zech perceived that one hand was holding

7    the baby and one was tucked underneath the baby, out of view. (Riedo Decl., Ex. K Zech Dep

8    61:8-10; 61:20). Officers Zech and Aguilar both ordered Fuhr to stop, and again, the order was

9    ignored by Fuhr. (Riedo Decl., Ex. K Zech Dep 83:22-23; Ex. M Aguilar BWV 21:49:45 -

10   21:49:55).

11        Thirty minutes had elapsed since Taylor's frantic 911 call. (Riedo Decl., Ex. B CAD).

12   Radio had advised that there was probable cause for DV assault with a firearm and kidnapping.

13   (Riedo Decl., Ex. B CAD). Officer Zech knew Fuhr had taken a baby from the mother and fired a

14   shot in the process and believed it might have been during a domestic violence incident. (Riedo

15   Decl., Ex. K Zech Dep 77:11-13; 90:5-10). Fuhr had fled the scene with the baby. (Riedo Decl.,

16   Ex. K Zech Dep 77:13). Fuhr evaded multiple officers, a K9 tracking team, and a police helicopter

17   tracking him through the neighborhood. (Riedo Decl., Ex. K Zech Dep 77:13-17). Fuhr had kicked

18   in a door of a residence to evade law enforcement. (Riedo Decl., Ex. K Zech Dep 77:19-20). When

19   spotted by law enforcement, Fuhr attempted to hide and then ran away from officers, ignoring

20   clear commands to stop. (Riedo Decl., Ex. K Zech Dep 77:20-23). The manner in which Fuhr was

21   holding the baby while running from officers showed an absolute disregard for the baby's safety.

22   (Riedo Decl., Ex. K Zech Dep 77:24-78:2). Fuhr jumped a fence while holding the baby. [Riedo

23

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 8
(2:23-cv-00600 BJR)

Decl., Ex. K Zech Dep 78:1-3]. Officer Zech believed Fuhr was still armed with the gun he had reportedly fired earlier at Taylor. (Riedo Decl., Ex. K Zech Dep 78:7-8).

Officer Zech recognized both an imminent threat to the baby's life, as well as a fleeting window of opportunity to stop that imminent threat. (Riedo Decl., Ex. K Zech Dep 83:23-25; 85:12-14; The Declaration of Noah Zech ("Zech Decl."), ¶ 5-7). Fuhr was cornered, looking for an avenue of escape, and Officer Zech believed the baby was Fuhr's kidnapped hostage. (Riedo Decl., Ex. K Zech Dep 78:4-7; Zech Decl., ¶ 5). Officer Zech believed Fuhr presented a grave and immediate threat to the life of the baby and that Fuhr could injure the baby or use the baby as a bargaining chip, shoot the baby, use the baby as a human shield, throw the baby down or at officers to distract officers and flee, or put a gun to the baby's head, among other possibilities. (Zech Decl. ¶ 6).

SWAT officers are trained to take advantage of fleeting windows of opportunity to intervene during hostage scenarios. (Riedo Decl., Ex. K Zech Dep 82:21-23). SWAT officers are trained to identify and take advantage of such windows of opportunity because the threat of danger to the victims is so high. (Riedo Decl., Ex. K Zech Dep 83:1-83:3; Declaration of Spencer Fomby ("Fomby Decl."), Ex. A, p. 16-17). Officer Zech knew from his hostage training that the baby's life and safety was the number one priority, above his own life, the life of fellow officers, or Fuhr's life. (Zech Decl.¶ 7; Fomby Decl., Ex. A, p. 15-16; 18).

Officer Zech saw that the baby was being carried lower on Fuhr's torso and that he had a clear shot to Fuhr's head. (Riedo Decl., Ex. K Zech Dep 85:3-6; Ex. O Zech BWV at 21:49:45 - 21:49:55). As a SWAT officer, he was trained to make precision shots and he had the kind of rifle that enabled him to do so. (Fomby Decl., Ex. A, p. 15).  SWAT officers are specially trained to make precision shots in close quarters and with hostages near the hostage taker. Hostage rescue

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

training includes shooting on the move and addressing moving targets. (Fomby Decl., Ex. A. p. 15). In that split second moment, Officer Zech aimed his rifle sight at Fuhr's head and fired one shot with the intent of stopping the imminent threat. (Riedo Decl., Ex. K Zech Dep 87:8-21; Ex. O Zech BWV 21:49:45-21:49:55). His shot was placed successfully and had the intended effect of stopping Fuhr, who slid to the ground and released the baby. (Ex. O Zech BWV; Ex. M Aguilar BWV at 21:49:45-21:49:55). Officer King immediately retrieved the baby, who was determined to be unharmed by paramedics. (Riedo Decl., Ex. L King Dep 48:24-49:3; Ex. N King BWV at 21:50; 21:50:30-21:51:05; 21:57:00-21:57:30). Officers rendered medical aid to Fuhr until paramedics arrived and took over. (Riedo Decl., Ex. J Ness Dep 29:22-25; 32:4-6). Fuhr died as a result of his injuries. (Complaint, 1:26-2:1).

After the incident, Officer Fleming and K9 Officer Buddy searched for the firearm, which had not been located on Fuhr's person or in the immediate vicinity of the shooting. (Fleming Decl., ¶ 12-13). K9 Officer Buddy tracked the same scent he was previously tracking to a bush in an alley that runs north/south between South Genesee Street and South Oregon Street, between 37th Avenue South and 38th Avenue South. This alley was approximately 1-1/2 blocks from the location of the shooting. (Fleming Decl., ¶ 14). Officer Fleming retrieved a handgun from the bush. (Fleming Decl., ¶ 15). The handgun was later matched to the fired cartridge casing found on the basketball court where Fuhr had reportedly fired a gun, and another fired cartridge casing found later in Taylor's car, which Fuhr had driven to the park. (The Declaration of Kevin Jones ("Det. Jones Decl."), Ex. 1; ¶ 5-8).

### III.  PROCEDURAL HISTORY

The Complaint was filed in this federal civil rights action on April 20, 2023. Claims are asserted on behalf of the following plaintiffs: (1) the Estate of Shaun Fuhr, by and through the

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 10
(2:23-cv-00600 BJR)

decedent's father and personal representative, Jason Fuhr[3]; and (2) Jason Fuhr, individually.  The Complaint[4] identifies eight causes of action asserted indiscriminately on behalf of all plaintiffs:

1.   Violation of the Fourth Amendment against Defendants City and Zech – use of excessive force;

2.   Negligence against Defendants City and Zech – failure to deescalate and use of excessive force;

3.   Wrongful death and survival against Defendants City and Zech;

4.   Respondeat superior and indemnification against Defendant City;

5.   Outrage against Defendants City and Zech;

6.   Washington Law Against Discrimination – RCW 49.60 – against Defendants City and Zech for race discrimination

7.   Section 1983 – against Defendants City and Zech for excessive force and unlawful seizure in violation of the Fourth and Fourteenth Amendments; and

8.   *Monell* liability against Defendant City.

Defendants City and Zech now move the Court to enter summary judgment in their favor on all claims in this action.

## IV.   ARGUMENT

### A.  Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

---

[3] Jason Fuhr, as a convicted felon, is not qualified to serve as the personal representative of the Estate.  *See* RCW 11.36.010.  Defense counsel advised Plaintiffs' counsel of this fact on April 22, 2024, but as of the filing of this motion, Mr. Fuhr is still the appointed personal representative.

[4] On February 1, 2024, the Court granted Plaintiffs leave to file a proposed Amended Complaint which added Davonta Fuhr, the decedent's mother, as an individual plaintiff. (Dkt. 22). Plaintiffs never filed the Amended Complaint.  For purposes of the present motion, Defendants assume Davonta Fuhr is or will be a plaintiff, but note that if the Amended Complaint is not filed, then Defendants' arguments as they pertain to Davonta Fuhr's claims are moot because she is not a party.  Record references to the Complaint in this motion will be to the currently operative Complaint (Dkt. 1).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 11
(2:23-cv-00600 BJR)

1    R. Civ. P. 56(a); *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 846 (9th Cir. 2012).

2    Judgment as a matter of law is also appropriate when the nonmoving party fails to make a

3    sufficient showing on an essential element of his case with respect to which he has the burden of

4    proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

5         At the summary judgment stage, the court views the evidence in the light most favorable

6    to the nonmoving party only where there is a "genuine" dispute as to the facts. *Scott v. Harris*,

7    550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).  "'When the moving party

8    has carried its burden under Rule 56(c), its opponent must do more than simply show that there

9    is some metaphysical doubt as to the material facts .... Where the record taken as a whole could

10   not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for

11   trial.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106

12   S. Ct. 1348 (1986)). Likewise, "the mere existence of a scintilla of evidence in support of the

13   non-moving party's position is not sufficient" to overcome summary judgment. *Arpin v. Santa*

14   *Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).  Speculative and conclusory

15   allegations are likewise insufficient.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

16   When there is objective evidence, like video footage, courts should "view the facts in the light

17   depicted by the videotape." *See Scott*, at 381.

18         The moving party is not under an affirmative obligation to produce evidence to refute the

19   nonmoving party's claim.  *Young v. Key Pharmaceuticals, Inc.*, 112 Wash.2d 216, 770 P.2d 182

20   (1989).  Once the moving party has shown that the nonmoving party lacks evidence on an

21   essential element of a claim, the burden shifts to the nonmoving party to present competent

22   evidence supporting the claim.  *Id.*

23

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 12
(2:23-cv-00600 BJR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1

2

**B. Defendants Are Entitled To Summary Judgment On Plaintiffs' First And Seventh Claims For Unlawful Seizure And Excessive Force Under The United States Constitution.**

3

4

    1.   <u>Plaintiff's First Claim For Excessive Force In Violation Of The Fourth Amendment Is Improper Because It Was Not Brought Pursuant To 42 U.S.C. Section 1983.</u>

5

6

    Plaintiffs' first and seventh claims identically assert that Defendants violated Shaun

7

Fuhr's constitutional rights when they unlawfully seized him and used excessive force against

8

him.  The first claim is pled as a direct violation of the Fourth Amendment, and the seventh claim

9

is pled pursuant to 42 U.S.C. section 1983 as a violation of the Fourth and Fourteenth

Amendment. (Dkt. 1, ¶¶ 61-64; ¶¶ 96-99).

10

    Plaintiffs' first claim for violation of the Fourth Amendment should be dismissed because

11

it is not asserted pursuant to 42 U.S.C. section 1983.  *See Emrit v. Nat'l Grid, Inc.*, No. CV 14-

12

14769-GAO, 2017 WL 2836998, at *1 (D. Mass. June 29, 2017) ("Generally, claims pled

13

directly pursuant to the Constitution entitle the defendant to dismissal").  To the extent Plaintiffs'

14

first claim is liberally construed as asserted pursuant to 42 U.S.C. section 1983 despite the fact

15

it is not pled in that manner, it is duplicative of Plaintiffs' seventh claim for violation of the

16

Fourth Amendment brought pursuant to Section 1983 and should still be dismissed.

17

    2.   <u>Plaintiffs' Seventh Claim For Excessive Force Should Be Dismissed To The Extent It Is Pled Under The Fourteenth Amendment.</u>

18

19

    Police excessive force claims are governed and analyzed under the Fourth Amendment,

20

not the Fourteenth Amendment.  *See United States v. Lanier,* 520 U.S. 259, 272, n. 7, 117 S.Ct.

21

1219, 1228 n. 7, 137 L.Ed.2d 432 (1997) ("[I]f a constitutional claim is covered by a specific

22

constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed

23

under the standard appropriate to that specific provision, not under the rubric of substantive due

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 13
(2:23-cv-00600 BJR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1    process).”  In their seventh claim, Plaintiffs seek to recover for the alleged deprivation of Shaun

2    Fuhr's civil rights by the use of excessive force.  (Complaint, ¶¶ 96-99).  This kind of claim is

3    brought under the Fourth Amendment, not the Fourteenth Amendment.  *Id*. Accordingly,

4    Defendants are entitled to summary judgment on Plaintiffs' seventh claim to the extent it is

5    premised on the Fourteenth Amendment.

6         3.     <u>Plaintiffs Jason Fuhr and Davonta Fuhr In Their Individual Capacities Lack

7             Standing To Assert A Fourth Amendment Excessive Force Claim Pursuant to 42 U.S.C. Section 1983</u>.

8       Plaintiffs' Fourth Amendment excessive force claim, as pled identically in the first and

9    seventh claims, is asserted indiscriminately on behalf of all Plaintiffs for the alleged violation of

10    Fuhr's rights.  A Fourth Amendment excessive force claim for violation of a decedent's rights

11    may only be brought on behalf of the decedent's estate.  *See Taylor v. City of Seattle*, No. C18-

12    262 TSZ, 2018 WL 5024029, at \*4 (W.D. Wash. Oct. 17, 2018) (“Fourth Amendment rights are

13    personal rights and may not be asserted vicariously. The non-estate Plaintiffs lack standing to

14    bring causes of action under the Fourth Amendment.”)  Plaintiffs Jason Fuhr and Davonta Fuhr

15    in their individual capacities should be dismissed from the first and seventh claims as pled,

16    because they are not proper plaintiffs on a Fourth Amendment excessive force claim.  The only

17    proper plaintiff on this claim is the Estate.

18         4.     <u>Plaintiffs Cannot Establish A Violation Of Decedent Shaun Fuhr's Fourth

19             Amendment Rights Because Officer Zech's Use Of Force Was Objectively Reasonable Under The Totality Of The Circumstances</u>.

20       Plaintiffs' core claim is that Officer Zech violated Fuhr's Fourth Amendment right to be

21    free from unreasonable seizure by using excessive force.  The general test for whether force is

22    reasonable or excessive is set forth in *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865 (1989).

23    Excessive force claims are evaluated under the Fourth Amendment's reasonableness standard, and

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 14
(2:23-cv-00600 BJR)

the court considers "'(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (*citing Graham*, 490 U.S. at 396).

Reasonableness is assessed from the perspective of an objectively reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and must allow for the fact that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396.  "To be sure, an officer will not be held liable if the circumstances under which the force was used evolved so rapidly that a reasonable officer would not have had time to recalibrate the reasonable quantum of force." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 733 (7th Cir. 2013); *see, e.g., Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1230 (9th Cir. 2014), *reversed in part on other grounds*, 135 S. Ct. 1765 (2015).

"Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694 (1985)).  "Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Garner*, 471 U.S. at 11–12, 105 S.Ct. at 1701. *See also Ting v. United States,* 927 F.2d 1504, 1510 (9th Cir. 1991).  "A reasonable use of deadly force encompasses a range of conduct, and the availability of a less intrusive alternative will not render conduct unreasonable." *Wilkinson*

1    *v. Torres,* 610 F.3d 546, 551 (9th Cir. 2010) (citing *Scott v. Henrich,* 39 F.3d 912, 915 (9th Cir.

2    1994)).  Here, the *Graham* factors weigh in Officer Zech's favor.

3                          a.    Severity Of The Crime At Issue

4           Officer Zech was aware that Shaun Fuhr "committed a crime involving the infliction or

5    threatened infliction of serious physical harm." *Garner*, 471 U.S. at 11–12, 105 S.Ct. at 1701.

6    Specifically, Officer Zech knew Fuhr was the reported aggressor in a felony domestic violence

7    incident which culminated in Fuhr firing a gun, taking a child against the mother's will, and fleeing

8    the scene.  Officer Zech also knew that Fuhr was actively evading police capture and that Guardian

9    One, a K9 track, and many other police resources had been deployed to search for Fuhr.  He knew

10   officers had probable cause to arrest Fuhr for felony domestic violence assault with a firearm and

11   kidnapping.

12          Felony domestic violence assault accompanied by the discharge of a firearm and the

13   kidnapping of a minor leaves no dispute that such crimes involved "the infliction or threatened

14   infliction of serious physical harm."  *Id.*  This factor weighs in Officer Zech's favor based on the

15   information that was reported to him at the time regarding Fuhr's crimes.

16                          b.    Whether The Suspect Poses An Immediate Threat To The Safety Of The
                                  Officers Or Others

17          A reasonable officer on the scene would have considered Fuhr to pose an immediate threat

18   to the safety of the child.  When Fuhr saw officers closing in around him, instead of surrendering,

19   he ran in the opposite direction of the officers.  Fuhr was issued a clear warning as he ran – orders

20   of "STOP, SHAUN STOP!" - shouted by Officer Zech and others.  Again, rather than stop and

21   surrender to police, Fuhr chose to continue running.  Officer Zech testified that as Fuhr was

22   running, he could see that "the baby's head and arms [were] flopping around pretty violently."

23

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 16
(2:23-cv-00600 BJR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

(Riedo Decl., Ex. K Zech Dep 57:25-58:1).  He described Fuhr as running with "…absolute disregard for the child's safety, and then jumping a fence with the child…" (Riedo Decl., Ex. K Zech Dep 78:1-3). Officer Aguilar described it similarly in his post-incident statement: "She was like floppy like, like I guess he was like running like with disregard or something, is what it looked like, I mean like how you'd run with a ball, maybe." (Aguilar Decl., ¶ 5).  Officer Zech's body worn video confirms that Fuhr was running while holding the child low on his hip, in only one arm, while swinging the other arm.  (Neale Decl., Ex. A, Appendix H; Riedo Decl., Ex. O 21:49:34-21:49:43)

From the perspective of a reasonable officer in Officer Zech's position, Fuhr presented a serious and obvious threat to the child.  Fuhr was an intoxicated felony suspect who had reportedly committed domestic violence assault with a firearm, kidnapped a child, and was actively evading capture, while grossly endangering the child.  (*See* Zech Decl., ¶ 4-7).  Fuhr reportedly fired a shot during the domestic violence incident, indicating that he was more than willing to use his gun in this encounter.  Fuhr was also seen holding the child in a careless manner as he ran from officers, further evidence that he prioritized evading arrest over the safety of the child.

Officer Zech followed his SWAT training and recalled the priorities of life in this scenario. This meant that the child's life and safety was paramount, above the life of the suspect and even above his own life and the lives of his fellow officers.  He also knew through his training that officers should take advantage of fleeting "windows of opportunity" to secure a hostage's safety and end a dangerous situation before it becomes worse. (Zech Decl., ¶¶ 5-7).

When Officer Zech intercepted and confronted Fuhr the final time, he once again shouted an order of "STOP."  Fuhr never stopped advancing toward officers at any point after he came into Officer Zech's view, and his previous behavior was evidence that he had no intention of

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 17
(2:23-cv-00600 BJR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

surrendering.  Within just a second or two, Officer Zech identified a fleeting window of opportunity to stop the grave threat to the child's life.  As a highly trained SWAT officer, he was confident in his ability to place the shot successfully without risking the child's life, and in that split second moment, he aimed at Fuhr's head and fired a single shot, which stopped the threat presented by Fuhr. (Zech Decl., ¶¶ 5-7).  The force used was reasonable given the immediate, serious threat Fuhr presented to the child's life and safety.

Fuhr also posed an immediate, serious threat to the safety of third parties. Fuhr just tried, unsuccessfully, to hide in an apartment building under construction and fled that location after the arrival of officers.  There were occupied residences in the immediate vicinity that Fuhr could try to enter and barricade himself in, thereby significantly elevating the dangerousness of the situation by putting third party residents at risk.  There was the risk that Fuhr would again fire his gun in public, which he had previously reportedly fired near a playground, outside those residences and that bullets from his gun or police guns returning fire would penetrate windows or walls, injuring or killing third parties.  Officer Zech's belief that Fuhr posed an immediate threat to the safety of third parties was objectively reasonable based on the situation he confronted.

Finally, Fuhr posed a clear and immediate threat to officer safety. It was objectively reasonable for officers to believe Fuhr was armed with a gun because witnesses reported Fuhr had just discharged a gun in the commission of a violent felony.[5]  Fuhr actively evaded arrest since that time, and he continued to actively evade arrest up until officers intercepted his path of travel along the fence line.  In the seconds just before the use of force, it was reasonable for Officer Zech

---

[5] It is undisputed that officers were unaware that Fuhr had discarded his gun while actively evading capture.  This information was not learned until after the shooting.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 18
(2:23-cv-00600 BJR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

to perceive Fuhr as cornered, desperate, and willing to do anything to escape arrest, including firing on officers.

Officer Zech did not see both of Fuhr's hands in the dynamic moments before he fired off the shot. That Fuhr was holding the child did not rule out the possibility that his gun was easily accessible, such as wedged between the child and his torso, in his waistband, or in a pocket.  It was objectively reasonable for Officer Zech to believe Fuhr was a serious and immediate threat to the safety of the child, third parties, and himself and other officers.  This factor weighs in Officer Zech's favor.

> c.    Whether The Suspect Is Actively Resisting Arrest Or Attempting To Evade Arrest By Flight

As discussed at length in the preceding sections, it is indisputable that Fuhr was actively evading arrest.  Upon first being located and confronted by officers, he chose to run while presumably armed and with a child hostage instead of complying with the officers' orders to stop. This elevated an already dynamic and dangerous situation because it caused Officer Zech and other officers to have to run after him.  Given that Fuhr actively evaded a conspicuous search effort for a prolonged period and had rejected a clear opportunity to stop and surrender just seconds earlier, Officer Zech's belief that Fuhr did not intend to surrender peacefully was objectively reasonable and in line with industry standard best practices for policing. (Fomby Decl., Ex. A, p. 7; 20-26). Plaintiffs can provide no admissible evidence or expert opinions to the contrary.[6]  The Court should enter summary judgment in favor of Defendants on Plaintiffs' first and seventh claims because Fuhr's Fourth Amendment rights were not violated as a matter of law.

> 5.    Officer Zech Is Entitled To Qualified Immunity.

---

[6] The opinions of Plaintiffs' expert, Gregory Gilbertson, should be disregarded in their entirety for the reasons stated in Defendants' Motion to Exclude, filed simultaneously herewith.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 19
(2:23-cv-00600 BJR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1    Qualified immunity protects officers unless they "(1) 'violated a federal statutory or

2    constitutional right' and (2) 'the unlawfulness of their conduct was clearly established at the

3    time.'" *Moore v. Garnand*, 83 F.4th 743, 750 (9th Cir. 2023).  Officer Zech is entitled to qualified

4    immunity under the first prong of the analysis because, as discussed in the preceding section, he

5    did not violate Fuhr's Fourth Amendment rights.  *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir.

6    2022).  Officer Zech is also entitled to qualified immunity under the second prong of the qualified

7    immunity analysis because, even assuming *arguendo* that Plaintiffs can prove a constitutional

8    violation, the unlawfulness of Officer Zech's conduct was not clearly established at the time of the

9    incident.  *Id.*

10    Qualified immunity protects police officers for actions that are on the "'hazy border

11    between excessive and acceptable force.'"  *Mullenix v. Luna*, 577 U.S. 7, 18, 136 S. Ct. 305, 312,

12    193 L. Ed. 2d 255 (2015) (citations omitted).   In excessive force cases, "in addition to the

13    deference officers receive on the underlying constitutional claim, qualified immunity can apply in

14    the event the mistaken belief was reasonable." *Saucier v. Katz*, 533 U.S. 194, 206, 121 S.Ct. 2151

15    (2001). In essence, Officer Zech enjoys "a kind of double deference: 'the substantive constitutional

16    standard protects [his] reasonable factual mistakes' and 'qualified immunity protects [him] from

17    liability where [he] reasonably misjudge[d] the legal standard.'" *Weinmann v. McClone*, 787 F.3d

18    444, 450 (7th Cir. 2015) (quoting *Catlin v. City of Wheaton*, 574 F.3d 361, 369 (7th Cir.2009)).

19    "It is the plaintiff who bears the burden of showing that the rights allegedly violated were

20    clearly established."  *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018) (quoting

21    *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017). "The Supreme Court has

22    repeatedly admonished courts 'not to define clearly established law at a high level of generality.'"

23    *Id.* (quoting *Mullenix*, 136 S.Ct. at 308). The dispositive question is therefore "whether the

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 20
(2:23-cv-00600 BJR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

violative nature of *particular* conduct is clearly established" in the specific context of the case.  *Id.* (internal quotation marks and citation omitted).

Plaintiffs can point to no analogous, binding precedent that would have put Officer Zech on notice that his decision to use deadly force was unlawful within the specific context of the situation he undisputedly confronted:  a suspect who had (1) fired a gun in public in the course of committing felony domestic violence assault and kidnapping a child, (2) fled the scene and evaded officers for over 30 minutes with the child, (3) ran from officers while ignoring clear verbal orders to stop, (4)  hopped a fence while allowing the child's head and body to flop around violently, and (4) continuously advanced toward officers while holding the child low in front of him.  Officer Zech is entitled to qualified immunity even assuming a Fourth Amendment violation is shown.

**C. Defendant City Of Seattle Is Entitled To Summary Judgment On Plaintiffs' Eighth Claim Alleging Municipal Liability Because There Is No Evidence That Fuhr's Constitutional Rights Were Violated Pursuant To Any Unconstitutional Policy, Custom Or Practice Of The City.**

It is well established that a municipality cannot be held liable under 42 U.S.C. § 1983 solely for having employed an individual who commits a tort. *Monell v. N.Y.C. Dep't Soc. Servs.,* 436 U.S. 658, 692, 98 S. Ct. 2018 (1978). To state a claim for municipal liability, a plaintiff must establish that the municipality had a deliberate policy, custom, or practice that "can be shown to be a moving force behind" the alleged constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011); *Gravelet-Blondin v. Shelton,* 728 F. 3d 1086, 1096 (9th Cir. 2013).

As a preliminary matter, Plaintiffs cannot maintain their *Monell* claim in the absence of an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573 (1986).  As discussed in Section B(4), *supra*, Fuhr's Fourth Amendment rights

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 21
(2:23-cv-00600 BJR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

were not violated as a matter of law.  As such, Plaintiff's *Monell* claim falls with the Fourth

Amendment claim and must be dismissed.[7]

Even if the Fourth Amendment claim survives, Plaintiffs' *Monell* claim still fails because

Plaintiffs cannot show that any unconstitutional policy, custom or practice of the City was a

moving force in the alleged violation of Fuhr's rights.  The boilerplate allegations of Plaintiffs'

claim fall far short of the pleading requirements for a *Monell* claim. *See Capp v. Cnty. of San

Diego*, 940 F.3d 1046, 1061 (9th Cir. 2019) (dismissing plaintiffs' *Monell* claims for not being

pled with specificity).  See also *Dold v. Snohomish Cnty.*, 649 F. Supp. 3d 1084, 1107 (W.D. Wash.

2022), *reconsideration denied*, No. 2:20-CV-00383-JHC, 2023 WL 1818139 (W.D. Wash. Feb. 7,

2023).   Plaintiffs have not identified, let alone produced evidence of, any specific policy, custom

or practice on the part of the City that caused or contributed to the violation of Fuhr's rights.

Conclusory allegations and speculative evidence are not sufficient to support this claim.

### D. Defendants Are Entitled To Summary Judgment On Plaintiffs' State Law Claims.

1. Plaintiffs Jason Fuhr and Davonta Fuhr Lack Standing In Their Individual Capacities To Assert Any Alleged State Law Claims Under Washington Wrongful Death And Survival Statutes.

In Washington, wrongful death statutes provide a cause of action for the survivors of a

person tortiously killed to recover their own losses, and survival statutes preserve the claims of

one who is tortiously killed (i.e., the decedent) for his or her own losses. *Est. of Lee ex rel. Lee v.

City of Spokane*, 101 Wash. App. 158, 173–74, 2 P.3d 979, 989 (2000)  In both instances, where

the decedent has a surviving spouse, domestic partner, or children, the causes of action can only

---

[7] To the extent the *Monell* claim is asserted by Jason Fuhr and Davonta Fuhr in their individual capacities, it should also be dismissed because they lack standing to assert any Fourth Amendment claims, as discussed *supra* in section B(3).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 22
(2:23-cv-00600 BJR)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

be brought by the decedent's estate on behalf of those beneficiaries.  *See* RCW 4.20.010 (wrongful death statute);  RCW 4.20.046(2) (general survival statute);  RCW 4.20.060 (special survival statute).

In the present case, Fuhr has surviving children who are the sole beneficiaries of his estate. The estate is the only proper plaintiff on the state law claims under Washington wrongful death and survival statutes. *Id.*  To the extent state law claims are brought on behalf of Plaintiffs Jason Fuhr and Davonta Fuhr individually, they should be dismissed with prejudice.[8]

2.  Defendants Are Entitled To Summary Judgment On Plaintiffs' Fourth Claim For Respondeat Superior And Indemnification.

Respondeat superior "is a means to impose vicarious liability on an employer for the acts of an employee, not a standalone cause of action. *Wright v. N. Am. Terrazo*, No. C12-2065JLR, 2013 WL 441517, at *2 (W.D. Wash. Feb. 5, 2013) (citing Restatement (Third) of Agency § 2.04.). This claim should be dismissed.  To the extent Plaintiffs are also purporting to assert some kind of indemnification claim, it should likewise be dismissed.  Plaintiffs have no standing to assert indemnification rights on behalf of Officer Zech and there is no viable basis for this claim.

3.  Defendants Are Entitled To Summary Judgment On Plaintiffs' Second Cause of Action For Negligence.

Plaintiffs allege that Defendants are liable for negligence by failing to de-escalate the situation with Fuhr and using deadly force on an unarmed suspect. (Dkt. 1, ¶¶ 69, 70). A plaintiff claiming negligence bears the burden of proving each of the elements – (1) that the City owed them a duty; (2) that it breached; (3) resulting in injury (4) proximately caused by that breach.  *See Wuthrich v. King County*, 185 Wash.2d 19, 25, 366 P.3d 926 (2016); *Hartley v. State*, 103 Wash.2d

___
[8] Plaintiffs Jason Fuhr and Davonta Fuhr in their individual capacities should be dismissed entirely from this action because they also lack standing on the federal claims as they are pled in the Complaint (and proposed Amended Complaint).  See section B(3), *supra*.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 23
(2:23-cv-00600 BJR)

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

768, 698 P.2d 77 (1985); *Pedroza v. Bryant*, 101 Wash.2d 226, 677 P.2d 166 (1984).  Failure by a plaintiff to provide evidence of any of these four elements warrants dismissal. *Baerlein v. State*, 92 Wash.2d 229, 595 P.2d 930 (1979).  In the present case, there is no evidence to support the elements of duty, breach, and causation.

To the extent Plaintiffs' negligence claim is based on the overall police response and the resources devoted to the call, or how the call was broadcast on the radio, it fails.  Fuhr cannot establish that a duty was owed to him individually, apart from the public at large, in devoting resources or calling out incidents in any particular manner on the radio. *See Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 551 (2019) (holding that the type of harm that permits a private cause of action for negligence is harm that results from an officer's direct contact with a plaintiff, "not the performance of a general public duty of policing.")  Even assuming a duty was owed, Plaintiffs cannot establish that Defendants breached it or that it caused Fuhr's alleged harm.  Given the undisputed evidence of what was reported to officers at the time, Fuhr's conduct met the definition of a kidnapping under Washington law. See RCW 9A.40.020 (kidnapping in the first degree); RCW 9A.40.030 (kidnapping in the second degree).  It is pure speculation to say that the police response would have been any different if the reported crime had been characterized as custodial interference instead of kidnapping. Taylor reported that Fuhr had no rights to the child, and his taking of the child was accomplished through a reported felony assault with a firearm while intoxicated. The police response would have been the same whether it was called kidnapping or custodial interference, because it was Fuhr's dangerous conduct that necessitated the large

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 24
(2:23-cv-00600 BJR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

response, not the labels attached to it.  Plaintiff's speculative argument and evidence otherwise should be rejected.[9]

To the extent Plaintiffs assert that officers were negligent in failing to use de-escalation tactics prior to the shooting, their claim also fails.  First, there was no breach of any duty to de-escalate.  Officers clearly attempted to de-escalate by having a large police presence and issuing multiple commands for Fuhr to "stop."  Fuhr ignored both and instead continued his efforts to evade arrest by running.  At the moment of the shooting, de-escalation tactics had already failed and further de-escalation was not feasible for the reasons previously discussed, and as articulated in the City's police practices expert report.  (Fomby report, ¶¶ 38-46).  De-escalation is not required or appropriate if it is not feasible under the circumstances.

Plaintiffs also cannot show that, but for the failure to de-escalate, Fuhr more likely than not would have survived.  Plaintiff's evidence in this regard is pure speculation, which is insufficient to sustain a negligence claim. *See Lacy v. Snohomish Cnty.*, 14 Wash. App. 2d 1045 (2020) (trial court properly directed verdict in favor of officers where plaintiff presented no evidence from which a reasonable juror could find, without speculating, that had officers used proper de-escalation tactics and not escalated the situation, the decedent more likely than not would have survived).

To the extent Plaintiffs argue that Officer Zech was negligent in using deadly force on an unarmed suspect, that argument fails for the same reasons articulated in Section B(4), *supra*.  Officer Zech believed Fuhr was armed with a gun at the time of the shooting.  Based on the undisputed facts, it was objectively reasonable for him to believe Fuhr was an armed, fleeing, non-

---

[9] The opinion of Plaintiffs' expert, Gregory Gilbertson, on this subject should be excluded for the reasons set forth in Defendants' Motion to Exclude.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 25
(2:23-cv-00600 BJR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

compliant, felony suspect who presented an immediate and serious threat to the child, the public, and officers.  There is no evidence that Officer Zech breached any duty owed to Fuhr in his decision to use deadly force under the undisputed facts of this case.

4.      Defendants Are Entitled To Summary Judgment On Plaintiffs' Outrage Claim.

The tort of outrage (intentional infliction of emotional distress) requires the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.  *Kloepfel v. Bokor*, 149 Wn.2d 192, 195, 66 P.3d 630 (2003). Claims for outrage must be predicated on behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Grimsby v. Sampson*, 85 Wn.2d 52, 59, 530 P.2d 291 (1975) (internal citations omitted).  Whether the conduct complained of is sufficiently extreme to result in liability is a preliminary question for the Court before a claim of outrage can be allowed to go to the jury.  *Pettis v. State*, 98 Wn. App. 553, 563, 990 P.2d 453 (1999).  As discussed in Section B(4), supra, Officer Zech used lawful force on Fuhr.  There is no basis for Plaintiffs' outrage claim, and Defendants are entitled to summary judgment on it.

5.      Defendants Are Entitled To Summary Judgment On Plaintiffs' Washington Law Against Discrimination Claim.

Plaintiffs claim Defendants unlawfully discriminated against Fuhr because of his race. This claim is baseless.  The Washington Law Against Discrimination ("WLAD") declares that each person may be free from discrimination based on race, creed, color, national origin, and mental disability. RCW 49.60.030. To show race discrimination, a plaintiff must show: (1) that he is a member of a protected class; (2) the establishment is a place of public accommodation or

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 26
(2:23-cv-00600 BJR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

assemblage; (3) the defendant discriminated against the plaintiff by not treating him in a manner comparable to the treatment it provides to persons outside that class; and (4) the protected status was a substantial factor causing the discrimination. *Demelash v. Ross Stores, Inc.*, 105 Wn. App. 508, 524-25, 20 P.3d 447, 456 (2001), *review denied*, 145 Wn.2d 1004 (2001). Here, there is absolutely no evidence to support the second, third, or fourth elements of a racial discrimination claim. Fuhr was shot on private property, not in a place of public accommodation. *See White v. City of Tacoma*, No. C12-5987 RBL, 2014 WL 172037, at *12 (W.D. Wash. Jan. 15, 2014) (dismissing WLAD claim because incident occurred on private property). Officer Zech had probable cause to arrest Fuhr for domestic violence assault with a firearm and kidnapping, and he shot Fuhr because Fuhr posed an imminent threat of death or serious bodily harm, not as a result of any discriminatory intent. Plaintiffs can offer no admissible evidence to support this claim, and it should be dismissed.

6.    Plaintiff's State Law Claims Are Barred by RCW 4.24.420.

RCW 4.24.420 provides that it is a "complete defense to any [state law] action for damages for personal injury or wrongful death that the person injured or killed was engaged in the commission of a felony at the time of the occurrence causing the injury or death and the felony was a proximate cause of the injury or death." Proximate cause rests on policy considerations as to how far the consequences of a defendant's acts should extend and hinges on principles of responsibility. *Beard v. Mighty Lift, Inc.*, 224 F. Supp. 3d 1131, 1136 (W.D. Wash. 2016). The existence of proximate cause between two events "is determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent." *Id.* at 1136-37 (internal quotation marks and citations omitted).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 27
(2:23-cv-00600 BJR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Fuhr's felonious armed assault, kidnapping of a child, and police evasion led directly to Officer Zech's use of force against him.  His decisions, and his decisions alone, put the child's life and safety at risk and necessitated the use of force.  His felony offenses were the proximate cause of the use of deadly force on Fuhr.  Defendants have no liability on Plaintiffs' state law claims under RCW 4.24.420.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court to enter summary judgment in their favor on all of Plaintiffs' claims.

DATED this 7th day of June, 2024.

ANN DAVISON
Seattle City Attorney


By:   */s/Rebecca Widen*
      Rebecca Widen, WSBA# 57339
      Catherine E. Riedo, WSBA# 50418
      Assistant City Attorney

      E-mail: Rebecca.widen@seattle.gov
      E-mail: catherine.riedo@seattle.gov



      Seattle City Attorney's Office
      701 Fifth Avenue, Suite 2050
      Seattle, WA 98104
      Phone: (206) 684-8200

      *Attorneys for Defendants City of Seattle and Noah Zech*

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 28
(2:23-cv-00600 BJR)

## CERTIFICATE OF SERVICE

I certify that on the 7th day of June, 2024, I caused a true and correct copy of this document to be served on the following in the manner indicated below:

| | |
|---|---|
| James Bible, WSBA #33985<br>BIBLE LAW GROUP<br>14205 SE 36th Street, Suite 100<br>Bellevue, WA 98006<br>Phone: (425) 519-3675<br><br>**[Attorney for Plaintiff]** | (X)  CM/ECF<br>jbiblesblaw@gmail.com<br>james@biblelawgroup.com<br>carla@biblelawgroup.com |
| Jesse Valdez, WSBA #35378<br>VALDEZ LEHMAN, PLLC<br>14205 SE 36th St., Ste. 100<br>Bellevue, WA 98006<br>Phone: (425) 458-4415<br><br>**[Attorney for Plaintiff]** | (X) CM/ECF<br>jesse@valdezlehman.com |
| Errin Loyal, WSBA #56672<br>LOYAL LAW PLLC<br>600 Stewart Street, Suite 400<br>Seattle, WA  98101<br><br>**[Attorney for Plaintiff]** | (X)  CM/ECF<br>errin@loyallawgroup.com |

*/s/Grace Selsor*_____
Grace Selsor, Legal Assistant

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 29
(2:23-cv-00600 BJR)

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200