HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JASON FUHR, individually, and as executor of THE ESTATE OF SHAUN FUHR, <br><br>Plaintiffs, <br><br>vs. <br><br>CITY OF SEATTLE, and NOAH ZECH <br><br>Defendants. | CASE NO. 2:23-cv-0600-BJR <br><br> ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment filed by Defendants City of Seattle and Noah Zech ("Defendants"). Dkt. No. 28. Plaintiffs' claims arise out of events that culminated in the shooting death of Shaun Fuhr by Seattle Police Department ("SPD") Officer Zech. Defendants seek judgment in their favor on all eight Causes of Action set out in the Complaint filed by Plaintiff Jason Fuhr, individually, and as personal representative of the Estate of Shaun Fuhr, his son ("Plaintiffs"). Dkt. No. 1. Having reviewed the briefs and exhibits filed in support of and in opposition to the motion and the relevant caselaw, the Court finds and rules as follows.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
-1

## II. BACKGROUND

At approximately 2:11 p.m. on April 29, 2020, SPD 911 dispatch received a call from Ajiona Taylor, who was at a ball field in Rainier Park in Seattle. *See* Decl. of C. Riedo, Ex. A, B. Taylor was calling to report that her baby's father, decedent Shaun Fuhr, had just taken their infant daughter from her. Taylor told the dispatcher that Fuhr was intoxicated, that he had a gun that he had just fired in the park, and that he had taken the baby and fled. Taylor stated that Fuhr had beaten her up the day before, and that she was scared for her daughter. At around the same time, 911 received another call from a nearby witness, Terrance Roy, who reported "a guy with a gun and a child" who was in an altercation with someone, "possibly his wife." Riedo Decl., Ex. C. He told the dispatcher that he saw the subject "pull a gun" and later place the gun "in the back of his pants," in his waistband. *Id*. Both Taylor and Roy provided a description of Fuhr and what he was wearing.

When SPD officers arrived at the park, they found Taylor in a state of extreme distress. She repeated to SPD Officer Irwin what she had told the 911 dispatcher: that she and Fuhr had gotten into a fight; that he had discharged a firearm in the park; and that he had taken their infant daughter against Taylor's will and fled on foot. *Id*., Ex. D. Taylor was clearly distraught. She reported to Irwin that Fuhr had hurt her and was extremely intoxicated; that there was a "no contact order" in place; and that the baby was in "danger, like *danger*." *Id*. Irwin observed bruises on Taylor's arms and face. On a basketball court a short distance away, where Taylor indicated that Fuhr had discharged the gun, Irwin located a shell casing where Fuhr had allegedly fired his gun towards Taylor. *Id*. Irwin broadcast these facts over the police radio.

Meanwhile, SPD had called in a SWAT team, a police helicopter, and a K9 tracker, and put an emergency ping on Fuhr's cell phone. Within half an hour of the first 911 call, the K9 team, accompanied by SWAT officers, had tracked Fuhr to an alley near the intersection of 37th and Dakota streets, near residential apartment buildings and a vacant building that was under construction. *See* Ness Dep., 23-26, Riedo Decl., Ex. J; Zech Dep., 21, 56, Riedo Decl., Ex. K. The officers identified a man matching the description Taylor had given. They observed him carrying an

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
-2

infant in one arm, jostling the baby in a manner that the officers uniformly testified suggested the baby was in grave danger; according to Defendant Zech, Fuhr "was carrying a small baby on his right side down near his hip. (Demonstrating.) It looked like kind of wrapped around the torso, around the waist of the baby. The -- as he's running, the baby's head and arms are flopping around pretty violently." Zech Dep., Riedo Decl., Ex. K, 57-58; *see also* Aguilar Decl., ¶ 5 ("What I do remember is seeing the, the child. I want to say it was his, his left hand and how he was like running with her. She was like floppy like, like I guess he was like running like with disregard or something, is what it looked like, I mean like how you'd run with a ball, maybe.").

Officers caught a glimpse of Fuhr behind one of the buildings, and repeatedly shouted at him to "stop," but Fuhr ran away from the officers and jumped over a fence and out of sight. He fled behind the apartment building next door, through the backyard. Riedo Decl., Ex. O. Zech ran the other direction around the front of the building with the intent of intercepting Fuhr. Zech Dep., 59. Zech was the first officer to confront Fuhr when Fuhr, as expected, came out the other side, and was stopped by another fence. Fuhr was holding the baby down near his waist, and was moving towards the officers. Zech Dep., 61 ("He was looking at the fence line. He turned, looked at me, and then glanced at a lower fence line about halfway between the two of us, and then started advancing my direction."). Zech raised his rifle and shot Fuhr once in the head, killing him. Officers quickly grabbed the baby, who after examination was determined to be uninjured. At the time he was shot, Fuhr had been unarmed; the gun he had been carrying, and that was linked to the shell casing found in the park, was later found in the bushes approximately a block away from where he was shot.

Jason Fuhr, individually and on behalf of the estate of his son Shaun Fuhr, filed this lawsuit on April 20, 2023. The Complaint outlines eight causes of action, each discussed below. For the reasons the follow, the Court concludes all eight causes of action must be dismissed.

### III. DISCUSSION

**A. Summary Judgment Standard**

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
-3

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**B. Claims Brought by Parties Not Properly Before the Court Must Be Dismissed**

Defendants seek dismissal of all claims brought on behalf of the decedent's estate. They argue that Jason Fuhr is not a proper personal representative of the estate of his son, because he (Jason) is a convicted felon. Under Washington law, a convicted felon is not qualified to act as a personal representative. RCW 11.36.010(1). In addition, although Plaintiffs purport to bring claims on behalf of Shaun Fuhr's mother Davonta Fuhr, she was not named as a plaintiff in the original Complaint, and has not been added as a party, either in her personal capacity or as a representative of her son's estate. On August 3, 2023, the parties filed a Stipulated Motion to Amend Plaintiff's Complaint. The Amended Complaint would have added Ms. Fuhr as a plaintiff. Dkt. No. 14. The Court granted the motion, but Plaintiff never filed the Amended Complaint. Dkt. No. 22. Defendants argue that Jason Fuhr, acting in an individual capacity (*i.e.*, not on behalf of the estate of his deceased son), is therefore the only proper Plaintiff in this lawsuit.

Plaintiffs fail to respond, either to Defendants' position that Jason Fuhr is not a proper personal representative of the Estate of Shaun Fuhr, or to the argument that Davonta Fuhr is not a party to this case. Accordingly, the Court concludes that the claims purportedly brought on behalf of the Estate of Shaun Fuhr are not properly before this Court, and must be dismissed. Furthermore, any claims purportedly brought on behalf of Davonta Fuhr are dismissed as well, as she is not a party to this case.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
-4

Ordinarily, for a dismissal of claims on grounds such as these, the Court would consider a request by Plaintiffs that the dismissal be *without* prejudice, to grant Plaintiffs leave to cure the deficiencies in their complaint. The Court declines to do so in this case, however, as Plaintiffs have not requested such leave. More critically, amendment in this case would be futile. As discussed more fully below, the Estate's and Ms. Fuhr's underlying claims, regardless of who has brought them, fail as a matter of law on substantive grounds as well.

### C. Federal Law Claims

#### 1. Cause of Action I: Violation of the United States Constitution, Fourth Amendment

Plaintiffs' Cause of Action I claims a violation of the Fourth Amendment to the U.S. Constitution, stating "Defendant City of Seattle and Defendant Officer Noah Zech are liable to the Plaintiff for violations of the Fourth Amendment under the U.S. Constitution." The claim does not cite 42 U.S.C. § 1983, but appears to be attempting to state a claim directly under the Fourth Amendment itself.

Defendants seek dismissal of this claim as improperly pled. As the Ninth Circuit has held, "a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (citing *Azul–Pacifico Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir.1992)). In addition, Defendants argue that even construing Cause of Action I as stating a § 1983 claim, it is merely redundant to Cause of Action VII, discussed *infra*, which explicitly claims a violation of the Fourth Amendment pursuant to § 1983. Plaintiffs make no argument to the contrary. Cause of Action I is therefore dismissed.

#### 2. Cause of Action VII: 42 U.S.C. § 1983

Cause of Action VII is brought under 42 U.S.C. § 1983, for violation of the Fourth and Fourteenth Amendments to the U.S. Constitution. Compl., ¶¶ 95-99. Plaintiffs allege that Defendants "used excessive force" and "unlawfully seized Shaun Fuhr." *Id*., ¶¶ 97, 98. The Court analyzes claimed violations of each Amendment separately.

### a. Fourteenth Amendment: Substantive Due Process

#### (1) Fourteenth Amendment Excessive Force Claim on Behalf of Estate

Defendants argue that the Estate's claim for unlaw seizure and excessive force is properly analyzed not under the Fourteenth Amendment's Due Process Clause, but under the Fourth Amendment to the U.S. Constitution. As the Supreme Court has held, "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."). Plaintiffs do not respond to this argument. To the extent that Cause of Action VII seeks relief on behalf of the Estate for any violation of Shaun Fuhr's right to be free from unlawful seizure or use of force under the Fourteenth Amendment, it is dismissed.

#### (2) Fourteenth Amendment Claim on Behalf of Jason Fuhr, Individually

Defendants also seek dismissal of Cause of Action VII to the extent that it was brought on behalf of Jason Fuhr, acting in his individual capacity, for violation of his "liberty interest in the companionship and society of [his] son." Pls.' Opp. at 23. Defendants argue that such a claim was inadequately pled. As they point out, Cause of Action VII specifically claims "damages for deprivation of civil rights of Shaun Fuhr," Compl., ¶ 96, but fails to make any reference to the Fourteenth Amendment rights of Jason Fuhr himself (or even to "Plaintiffs" generically). In their opposition, Plaintiffs fail to address this critical procedural deficiency. To the extent Plaintiffs had intended to state a claim for violation of Jason Fuhr's Fourteenth Amendment rights, they have failed to do so, even construing the pleading liberally. Defendants' request for dismissal of such claim is therefore granted.

The Court also concludes that even if this claim had been adequately pled on Jason Fuhr's behalf, it must be dismissed. The law has recognized that under the Due Process Clause of the Fourteenth Amendment, a "parent has a constitutionally protected liberty interest . . . in the companionship and society of his or her child." *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir.1991). Even so, however, "only official conduct that 'shocks the conscience' is cognizable as a due process violation." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (citations omitted). Plaintiffs argue that "[t]he actions of [Officer] Zech were a product of actual deliberation which resulted in a decision to shoot an unarmed Mr. Fuhr" and that "it is up to a jury to determine whether [Officer] Zech was deliberately indifferent." Pls.' Opp. at 23.

However, "deliberate indifference" alone will not meet the shocks-the-conscious standard where, as here, officers face "an evolving set of circumstances that took place over a short time period necessitating 'fast action' and presenting 'obligations that tend to tug against each other.'" *Porter*, 546 F.3d at 1139-40 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998)). Instead, a plaintiff must allege (and ultimately prove) that the officer's actual purpose was "to cause harm unrelated to the legitimate object of arrest." *Id.* at 1140. "The purpose-to-harm standard is a subjective standard of culpability," which may be met by evidence that the use of force is meant, for example, only to "teach a suspect a lesson" or to "get even." *A.D. v. California Highway Patrol*, 712 F.3d 446, 453 (9th Cir. 2013).

Plaintiffs have failed to allege in their response to Defendants' motion any facts that would support a conclusion that Zech acted with a purpose of causing "harm unrelated to the legitimate object of arrest,"—for example, that he intended to teach Fuhr a lesson or get even, or with some other wholly improper ulterior purpose. It is undisputed that Zech's intent was to stop a felony suspect from causing further—and possibly deadly—harm to a defenseless baby, among other legitimate law enforcement objectives discussed herein. *See* Zech Decl., ¶¶ 6, 7 ("At the time I used force, I believed Mr. Fuhr presented a grave and immediate threat to the life of the baby. . . . I recognized a fleeting window of opportunity to stop the threat Mr. Fuhr presented to the baby,

as well as to the public, my fellow officers, and myself."). Plaintiffs' putative claims brought on Jason Fuhr's behalf under the Fourteenth Amendment are therefore dismissed on the merits as well.

### b. Fourth Amendment: Excessive Force

The Complaint does not specify whether the Fourth Amendment claims are brought by Jason Fuhr individually, or on behalf of Shaun Fuhr's Estate. For the reasons that follow, the Court concludes the claims must be dismissed in either event.

#### (1) Fourth Amendment Claims brought by Jason Fuhr, Individually

Defendants ask the Court to dismiss Plaintiffs' Fourth Amendment claims to the extent they are brought on behalf of Jason Fuhr. As Defendants point out, correctly, "Fourth Amendment claims are 'personal' and may not be 'vicariously asserted.'" *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1128 (9th Cir. 2017) (citing *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998)); *Alderman v. United States,* 394 U.S. 165, 174 (1969). This being so, and Plaintiffs having failed to respond to this argument, the Court dismisses Plaintiffs' Cause of Action VII, Fourth Amendment claims to the extent they are brought on behalf of Jason Fuhr, individually.

#### (2) Fourth Amendment Claims brought by Shaun Fuhr's Estate

A claim based on the Fourth Amendment right to be free from the use of excessive force by law enforcement officers is analyzed under a "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386 (1989). The reasonableness inquiry in an excessive force case is an objective one: "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id*., at 396–97. The analysis must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*.

In *Graham*, the Supreme Court outlined several factors to be used in weighing reasonableness in excessive force cases, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
-8

resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. The threat element is the most important consideration, and "[a]n officer's use of deadly force is reasonable only if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014) (quoting *Tennessee v. Garner,* 471 U.S. 1, 3 (1985)). The question on summary judgment "is whether a reasonable jury would necessarily find that [the officer] perceived an immediate threat of death or serious physical injury at the time he shot" the decedent. *Id*., 747 F.3d at 794.

Defendants seek summary judgment on Plaintiffs' Fourth Amendment claim, brought on behalf of Shaun Fuhr's estate. They argue that based on the *Graham v. Connor* factors, no reasonable jury could conclude that Zech used excessive force against Shaun Fuhr. The Court weighs each factor in turn.

### *Severity of Alleged Crimes*

Defendants first point to the severity of the crimes that the officers, including Zech, had probable cause to believe Fuhr had committed. As Zech testified, "there was probable cause broadcast over the radio for assault one with a firearm and kidnapping." Zech Dep., 39-40. Zech was aware of the facts that had been reported about Fuhr taking the child. *Id*., 77 ("So the call that I responded to was a person that had taken a baby from a mother and had fired a shot in the process of doing it. They had fled the scene. Police were actively tracking them with a K-9 and a helicopter in the area. It was a protracted event. They were tracking him through the neighborhoods, believed to still have the child and be armed. We believed that he had obviously fired a round in the process of taking the child and then also kicked in a door of a residence to evade police."). The seriousness and potentially ongoing nature of these crimes, Defendants argue, support Zech's decision to use deadly force. *See Vasquez v. City of San Jose*, 634 F. Supp. 3d 712, 722 (N.D. Cal. 2022), *aff'd*, No. 22-16691, 2024 WL 445320 (9th Cir. Feb. 6, 2024) (citing *Garner*, 471 U.S. at 11–12) ("An officer who has probable cause may prevent a fleeing suspect's escape using deadly force.").

In response, Plaintiffs argue that the officers lacked probable cause to believe Fuhr had committed the alleged crimes. However, it is undisputed that the following evidence and information were known to the officers: the 911 calls from Taylor and Roy, who both described Fuhr's appearance and stated that Fuhr, at the very least, had been brandishing a gun at Taylor in a public park; Taylor's in-person statements to Officer Irwin, stating Fuhr had beaten her up the day before and had in fact discharged the gun at her; Irwin's observations of the bruises on Taylor's face and arm; the shell casing found near where Taylor told the officer Fuhr had fired the gun; Taylor's description of Fuhr being severely intoxicated and having taken their baby from her against her will, and her fear for the baby's safety; and Zech's and the other officers' observation of Fuhr attempting to evade arrest and carrying the baby in a way that threatened the baby's safety. *See supra*, § II. Plaintiffs do not provide evidence disputing any of these allegations, and the Court concludes that the officers had probable cause to believe Fuhr had committed the crimes alleged. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."). Moreover, the severity of these alleged crimes, which involved both the actual infliction and the threatened infliction of serious physical harm to the baby and others, has not been, and could not be, reasonably disputed.[1] These circumstances support the conclusion that the use of deadly force was reasonable. *See Garner*, 471 U.S. at 11–12, ("[I]f . . . there is probable cause to believe that [the suspect] has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape.").

### *Whether Suspect Was Attempting to Evade Arrest*

Second, Zech witnessed Fuhr actively attempting to evade arrest by fleeing on foot, trespassing through buildings and the backyard of private residences, and eluding arrest for over 30 minutes, while being chased by multiple officers, including a K9 tracker and a police helicopter.

---

[1] As Defendants point out, Plaintiffs do not appear to dispute that the crimes it is alleged Fuhr committed "involv[ed] the infliction or threatened infliction of serious physical harm," such that "deadly force may be used if necessary to prevent" Fuhr's escape. Defs.' Repl. At 2 (citing *Garner*, 471 U.S. at 11).

The Court rejects Plaintiffs' farfetched argument that the body camera worn by Zech shows Fuhr in the process of surrendering. Given the radical and reckless actions Fuhr took to elude capture in the 30 minutes leading up to the final seconds before he was shot, including running away from the officers and jumping a fence while carelessly holding a baby *just seconds earlier*, the Court disagrees that a reasonable jury could find that in advancing towards the officers in those last moments, Fuhr was attempting to surrender. Plaintiffs also speculate that Fuhr may not have heard the officers' commands to stop and surrender. Pls.' Opp. at 19. Again, this theory is utterly unsupportable. On video footage from their body worn cameras, the officers can be heard shouting "Stop!" loudly and repeatedly, within yards of the decedent. *See, e.g.,* Riedo Decl., Ex. N. The notion that Fuhr was unaware that he was being told to surrender, after being chased through the neighborhood by a dozen officers (and a helicopter) for half an hour, is simply implausible. It is evident that Fuhr was attempting to evade arrest up to and including in the last moments of his life. These facts support the conclusion that Zech's use of force was reasonable.

### *Immediate Threat to Officers or Others*

Third and most crucially, Defendants argue that Fuhr posed an immediate threat to the life and safety of the officers and others. Zech personally observed Fuhr actively running with the baby in a way that evidenced blatant disregard for that baby's safety. Zech has testified that he saw that "the baby's head and arms [were] flopping around pretty violently," and that Fuhr was running with "absolute disregard for the child's safety, and then jumping a fence with the child." Zech Dep 57:25-58:1; 78:1-3. Zech was aware that Fuhr was extremely intoxicated, was likely armed with a gun (which he had recently and recklessly discharged in a public park), and that he had already exhibited risky and erratic behavior, acting with extreme recklessness towards the life and safety of nearby strangers, the officers, and most disturbingly of all, his own baby. As Zech has stated, he reasonably believed not only that Fuhr was acting with dangerous disregard for the baby's life and safety; he also feared that Fuhr might escalate that danger by using the baby as a hostage or a human shield to continue to evade arrest. *See* Zech Decl., ¶ 6 ("At the time I used force, I believed Mr. Fuhr

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
-11

presented a grave and immediate threat to the life of the baby. Based on my training and experience, I believed Mr. Fuhr could injure the baby or use the baby as a bargaining chip, shoot the baby, use the baby as a human shield, throw the baby down or at officers in an attempt to distract officers and flee.").

In response, Plaintiffs argue that Fuhr could not have been a threat to the officers' safety because he was no longer in possession of his gun. This argument is unavailing for at least two independently sufficient reasons. First of all, whether or not they were right, the officers had reason to believe Fuhr was in possession of a firearm, given that he had discharged one just 30 minutes earlier and a witness observed him placing it in his pants waistband. The question before the Court is what the officers reasonably believed, not what was actually true. *Saucier v. Katz,* 533 U.S. 194, 206 (2001) ("Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances . . . and in those situations courts will not hold that they have violated the Constitution."). Second and more importantly, whether or not Fuhr was in possession of a firearm is irrelevant to whether the officers reasonably perceived that Fuhr was posing a threat to the life and safety of the baby he was carrying. From the officers' testimony, it is clear that the manner in which Fuhr was handling the baby could have caused that baby deadly harm. *See* Zech Dep., 57-58

For this reason (among others), *Cruz v. City of Anaheim*, on which Plaintiffs attempt to rely for the proposition that a jury must decide whether the use of deadly force was reasonable, is inapposite. 765 F.3d 1076, 1079 (9th Cir. 2014). Defendants' liability in *Cruz* turned on whether the decedent posed an immediate threat to the officers, and on whether Cruz was reaching for a gun in his waistband when the officers opened fire and killed him. Because the facts were in dispute on this question, the Ninth Circuit reversed the district court's judgment in the defendants' favor. In contrast, any dispute in this case as to whether the decedent had or was reaching for a firearm is immaterial. Regardless of whether Fuhr was armed and regardless of whether he posed an immediate threat to the officers pursuing him, it simply cannot be disputed that Fuhr's behavior in

the 30 minutes leading up to his death was an immediate threat to the life and safety of the baby. Under these circumstances, the Court concludes that no reasonable jury could find that the force Zech used to prevent Fuhr from continuing to endanger the life of the child was unconstitutionally excessive.

      **c.      Qualified Immunity**

Defendants also argue that even if they are not entitled to summary judgment on the merits of Plaintiffs' Fourth Amendment claim, that claim should be dismissed on the basis of Zech's qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Wood v. Moss*, 572 U.S. 744 (2014) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011)). It essentially "protects all but the plainly incompetent or those who knowingly violate the law." *Kisela v. Hughes*, ⸺ U.S. ⸺, 138 S. Ct. 1148, 1152 (2018) (per curiam). The plaintiff bears the burden of proof in showing that the right allegedly violated was clearly established at the time. *Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (1991).

Plaintiffs have not met this burden in this case. Instead, Plaintiffs cite cases that stand for generally applicable propositions, but bear few similarities factually to the case at hand. For example, Plaintiffs cite *George v. Morris* for the proposition that "officers may not use deadly force against a person who is armed but cannot be reasonably be perceived to be taking any furtive, harrowing, or threatening actions." 736 F.3d 829, 838 (9th Cir. 2013). In *George*, however, it was "undisputed that Mr. George had not committed a crime, and that he was not actively resisting arrest or attempting to evade arrest by flight," and whether the decedent had in fact made any threatening gestures was in dispute. These facts alone render that case inapplicable to the one before this Court, particularly in the context of whether Zech is entitled to qualified immunity. *See Kisela,* 138 S. Ct. at 1152 (cautioning that clearly established law should not be defined at a "high level of generality" and instead "must be particularized to the facts of the case"). In contrast here, as discussed above,

the officers had probable cause to believe Fuhr had committed crimes involving "the infliction or threatened infliction of serious physical harm," was attempting to evade arrest, and according to both witnesses and video footage, was posing an immediate threat to the safety of the infant he was carrying. The law established in *George* is not a basis for denying Zech qualified immunity in this case.

At least as inapposite as *George* is another case Plaintiffs cite, *Harris v. Roderick*, which involved the shooting of an armed man by an FBI agent during the infamous Ruby Ridge, Idaho standoff. 126 F.3d 1189 (9th Cir. 1997). That case involved a set of facts too dissimilar from the facts here to be instructive as clearly establish law, not least because the man who was shot in *Harris* did "not pose an immediate threat to [the officers'] safety or to the safety of others" at the time. *Id.*, 126 F.3d 1204. As discussed above, the undisputed evidence here demonstrates that the officers reasonably perceived Fuhr to pose an immediate threat to the life and safety of the baby he was holding and to the officers and other third parties around him. In short, Plaintiffs have failed to demonstrate that clearly established law put Zech on notice that use of deadly force would have been unreasonable, given the facts of this case that were known to him at the time. Zech, accordingly, is entitled to qualified immunity from Plaintiffs' claims, and they are dismissed on these grounds as well.

### 3. Cause of Action VIII: *Monell* Claim

Plaintiffs assert Cause of Action VIII against the Defendant City of Seattle under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, (1978), alleging that "[t]he conduct described herein by Noah [Z]ech was undertaken pursuant to the policies, practices and customs of the City of Seattle's police department." Compl., ¶¶ 100-103. The Complaint generally alleges that the City failed to train, supervise, and hold officers accountable for use of excessive force, without including any specific allegations. *Id*. Defendants seek dismissal of Plaintiffs' *Monell* claim, challenging the "conclusory" and "boilerplate" allegations in the Complaint as insufficient, and arguing that "Plaintiffs have not identified, let alone produced evidence of, any specific policy,

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
-14

custom or practice on the part of the City that caused or contributed to the violation of Fuhr's rights." Defs.' Mot. at 22. In response, Plaintiffs fail to defend—or even discuss—their *Monell* claim, neither arguing their allegations are sufficient, nor providing any additional allegations (let alone evidence) necessary to oppose Defendants at this summary judgment stage. Plaintiffs' *Monell* claim is therefore dismissed.

### D. State Law Claims[2]

#### 1. Cause of Action II: Negligence

Plaintiffs' Second Cause of Action is for negligence, brought under Washington law, against both Defendants. Compl., ¶¶ 65-74. Plaintiffs claim that Defendants owed the decedent a duty of reasonable care, and that they breached that duty "by failing to de-escalate the force used against Shaun Fuhr." *Id*., ¶ 68. To establish a claim for negligence, a plaintiff must demonstrate: "(1) the existence of a duty owed to the complaining party; (2) a breach of the duty; (3) resulting injury; and (4) that the breach was the proximate cause of the injury." *Folsom v. Burger King,* 135 Wn.2d 658 (1998); *see also Stalter v. State,* 151 Wn.2d 148 (2004). Defendants seek dismissal of Plaintiffs' negligence claim, arguing that Plaintiffs have failed to establish the elements of duty, breach, and causation.

The Court concludes that Plaintiffs have demonstrated that there is, at a minimum, a question of fact as to whether Defendants owed Fuhr a duty of reasonable care. *See Beltran-Serrano v. City of Tacoma*, 193 Wn. 2d 537, 540 (2019). However, Plaintiffs fail to provide any specific evidence or argument regarding how that duty may have been breached, or how a breach may have been the proximate cause of Fuhr's injury. Instead, as to the element of breach, Plaintiffs state only the following: "SPD officers were negligent as they failed to exercise reasonable care as a

---

[2] Defendants argue that Plaintiffs' state-law claims are barred by RCW 4.24.420, which provides that it is a "complete defense to any [state law] action for damages for personal injury or wrongful death that the person injured or killed was engaged in the commission of a felony at the time of the occurrence causing the injury or death and the felony was a proximate cause of the injury or death." Because the Court concludes that all of Plaintiffs' state-law claims fail on their merits, the Court does not reach the question of Defendants' affirmative defense, but notes that by failing to respond to this argument, Plaintiffs have waived any objection to it.

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
-15

reasonably prudent person would have known that it is impossible to obey commands when he was not given sufficient time to comply. SPD officers breached that duty." Pls.' Opp. at 25. As a preliminary matter, as noted above, the Court rejects as implausible Plaintiffs' suggestion that Fuhr—having eluded for 30 minutes the officers chasing him—was not given time to comply with the officers' commands to stop. *See supra*, III.C.2.(b)(2). Furthermore, apart from this unsupportable allegation, nowhere in the Complaint or in Plaintiffs' response to Defendants' motion can the Court discern what specific (or for that matter, general) acts or omissions Plaintiffs are claiming might constitute a breach. Indeed, while Defendants in their motion identify two specific acts that they argue *do not* constitute a breach ("overall police response to the incident at the park or calling out the incident as a kidnapping over police radio"), Plaintiffs fail in their response to refer to these acts at all, let alone attempt to argue they constituted a breach.

The Court also concludes that Plaintiffs have failed to demonstrate the element of causation. As Defendants point out, Plaintiffs have not defended their claim that "but for the failure to de-escalate, Fuhr more likely than not would have survived." Defs.' Mot. at 25. Instead, Plaintiffs merely restate this element of a negligence claim, claiming without any supporting evidence or argument that the officers' actions "caused resulting in [*sic*] Shaun Fuhr's death and were the proximate cause of his death. SPD's negligence was the proximate cause of Shaun Fuhr's death." Pls.' Opp. at 25. Given the myriad intervening causes indisputably contributing to Fuhr's death, this general and conclusory assertion is inadequate to withstand summary judgment. At this stage, the nonmoving party has a duty to provide argument and evidence supporting the essential elements of its claims that the moving party has demonstrated are lacking. *Anderson*, 477 U.S. at 256. Simply reciting the elements of the claim is insufficient. Plaintiffs' Cause of Action II for negligence is therefore dismissed.

### 2. Cause of Action III: Wrongful Death and Survivor

Defendants seek dismissal of the wrongful death and survivor claims brought on behalf of Jason Fuhr individually. They argue that under the Washington statutes authorizing these claims,

"where the decedent has a surviving spouse, domestic partner, or children, the causes of action can only be brought by the decedent's estate on behalf of those beneficiaries." Defs.' Mot. at 22-23 (citing RCW 4.20.010, 4.20.046(2), and 4.20.060). Defendants argue that since Shaun Fuhr has surviving children, his father Jason Fuhr is not the proper party to bring claims under these statutes. Plaintiffs fail to respond to this argument. Their wrongful death and survivor claims are therefore dismissed.

### 3. Cause of Action V: Outrage

Cause of Action V is based on the tort of outrage. Compl., ¶¶ 88-91. Defendants seek dismissal of this claim, arguing that as a matter of law, Plaintiffs cannot demonstrate, as they must, that Zech or the City engaged in "extreme and outrageous conduct." Defs.' Mot. at 26. In their response, Pls.' Opp. at 25, Plaintiffs concede that their outrage claim rises and falls with their excessive force claim which, as discussed above, lacks merit. The outrage claim accordingly is dismissed as well.

### 4. Cause of Action VI: Washington Law Against Discrimination

In asserting their claim under the Washington Law Against Discrimination ("WLAD"), Plaintiffs allege that "Defendants discriminated against Shaun Fuhr when Officer Noah Zech shot him without investigation or de-escalation," and claim Zech "consciously" chose to do so "because Shaun Fuhr is African American." Compl., ¶¶ 92-94. Defendants seek dismissal of this claim because, among other deficiencies, Plaintiffs have alleged no facts supporting their assertion that Zech's actions were racially motivated. Plaintiffs state in response only that "there is evidence that SPD officers knew that Shaun Fuhr was an African American. Shaun Fuhr was treated differently because he was an African American, and SPD discriminated against him because of his race." Pls.' Opp. at 26. As noted above, at the summary judgment stage, once the moving party has identified a deficiency in the non-moving party's claim, the latter may not merely rely on conclusory allegations or a restatement of the elements of the claim, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Here, Plaintiffs have failed to provide any

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
-17

specific allegations, let alone evidence, supporting even an inference that Zech's actions were motivated by Fuhr's race. Plaintiffs' WLAD claim is dismissed.

**5. Cause of Action IV: Respondeat Superior and Indemnification**

Plaintiffs' Cause of Action IV is for "Respondeat Superior and Indemnification," purportedly under Washington state law. Compl., ¶¶ 83-87. The Complaint asserts that "Defendant City of Seattle is liable to the Plaintiff for Noah Zech's actions under the doctrine of Respondeat Superior," and that "the City of Seattle must indemnify the Defendant Officer for any judgment against him." *Id*. As Defendants point out (and Plaintiffs do not dispute), these purported claims are not independent causes of action against the City, but theories of liability that hinge on the liability of another party, in this case Defendant Zech. Because, as discussed above, the Court has determined that Zech is not liable on any of Plaintiffs' claims, Cause of Action IV is also dismissed.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED and Plaintiffs' Complaint is DISMISSED with prejudice.

The pending motions (1) to Exclude Expert Opinions, Dkt. No. 42; (2) to Stay Trial, Dkt. No. 53; and (3) to Compel Paternity Test, Dkt. No. 61, are DENIED as MOOT.

For the purpose of protecting the identity of the minor child, the Motion to Seal, Dkt. No. 39, is GRANTED. Exhibits A, F, I, M, N, and O to the Declaration of Catherine Riedo, and Appendices C, D, and E to the Declaration of William Neale, filed in support of Defendants' Motion for Summary Judgment, are hereby sealed.

SO ORDERED. DATED this 23rd day of August, 2024.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge